THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| SCOTT M., individually and on behalf of J.M., a minor,<br><br>Plaintiff,<br><br>v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY and the VERMONT ELECTRIC POWER COMPANY HEALTHCARE BENEFIT PLAN,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO TRANSFER VENUE<br><br>Case No. 4:21-cv-00007-DN-PK<br><br>District Judge David Nuffer |

Plaintiff Scott M. brought suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), seeking to recover expenses incurred for the medical care and treatment of J.M. at the Red Cliff Ascent ("Red Cliff") and Telos treatment facilities located in Utah.[1] Scott M. alleges that Defendants Cigna Health and Life Insurance Company ("Cigna") and Vermont Electric Power Company Healthcare Benefit Plan ("Plan") (collectively "Defendants") improperly denied coverage of the cost of J.M.'s care.[2] Defendants move for transfer of venue to the District of Vermont under 28 U.S.C. § 1404(a) ("Motion").[3] Plaintiff opposes[4] the Motion ("Opposition"). For the reasons discussed below, Defendants' Motion is GRANTED.

---

[1] Complaint, docket no. 2, filed Jan. 19, 2021.

[2] *Id.*

[3] Cigna Health and Life Insurance Company's Motion to Transfer Venue under 28 U.S.C. § 1404 ("Motion"), docket no. 24, filed May 21, 2021.

[4] Plaintiff's Memorandum in Opposition to Defendants' Motion to Transfer Venue under 28 U.S.C. § 1404 ("Opposition"), docket no. 25, filed Jun. 6, 2021.

Table of Contents

**BACKGROUND** ............................................................................................................... 2
**DISCUSSION** ................................................................................................................... 4
   I.   LEGAL STANDARD FOR TRANSFERRING VENUE UNDER § 1404(A). .................... 4
   II.  TRANSFERRING VENUE IS PROPER UNDER § 1404(A). ......................................... 6
      *A. Plaintiff's choice of forum receives less deference where the location of treatment is the only connection to the forum state* ................................................................................... 6
      *B. The accessibility of witnesses and other sources of proof weigh in favor of transfer* ........ 8
      *C. Court congestion is a neutral factor, weighing neither in favor of nor against transfer.* 12
      *D. Practical considerations of privacy, cost of counsel, and the underlying purposes of ERISA weigh in favor of transfer* ................................................................................... 13
**ORDER** ........................................................................................................................... 16

## BACKGROUND

Plaintiff Scott M. is a resident of Addison County, Vermont, and is the father of J.M.[5] Scott M. is a participant in, and J.M. a beneficiary of, the Plan.[6] The Plan is a self-funded employee welfare benefits plan under ERISA and is sponsored and administered by Vermont Electric Power Company, whose main office is in Rutland, Vermont.[7] Cigna, an insurance company headquartered in Bloomfield, Connecticut, provided claims adjudication support to the Plan. Cigna denied claims for payment of J.M.'s treatment at Red Cliff and Telos.[8]

J.M. was treated in Utah, first at Red Cliff beginning on January 20, 2018, and then was moved to Telos for treatment on April 18, 2018.[9] In June 2018, Cigna exercised its discretionary

---

[5] Complaint ¶ 1 at 1.

[6] *Id.* ¶ 3 at 2.

[7] Motion at 3.

[8] *Id.*

[9] Complaint ¶ 4 at 2.

authority under the Plan to adjudicate claims[10] and denied J.M.'s treatment at Red Cliff, stating that "Outdoor Youth Programs a/k/a Wilderness Programs are not a covered service under the terms of your Plan."[11] After J.M. was transferred to Telos, Cigna again denied payment, stating that J.M.'s "symptoms do not meet the Cigna Behavioral Medical Necessity Criteria for Residential Mental Health Treatment for Children and Adolescents for admission and continued stay from April 18, 2018."[12] Cigna's decision was informed, at least in part, by Frederick Green's MD assessment that J.M. did not meet the criteria for admission and continued stay, stating that "[t]here is no evidence of acute psychosis or medical illness interfering with your process of problem sloving [sic]."[13]

Plaintiff brought suit against Defendants under ERISA, with an additional claim for violations under the Mental Health Parity and Addiction Equity Act ("Parity Act").[14] Plaintiff alleges proper venue under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c),[15] asserting that Cigna does business in Utah, J.M.'s treatment took place in Utah, and litigation in Utah would serve the privacy interests of Plaintiff.[16] Defendants move for transfer, asserting that "the interests of justice mandate that the District Court of Vermont resolve this dispute."[17] Defendants

---

[10] Motion at 3.

[11] Complaint ¶ 12 at 4.

[12] *Id.* ¶ 20 at 6.

[13] *Id.* ¶ 21 at 6.

[14] *Id.* ¶ 8 at 3.

[15] *Id.* ¶ 7 at 2.

[16] *Id.*

[17] Defendant's Reply to Response to Defendant's Motion to Change Venue ("Reply") at 1, docket no. 28, filed June 25, 2021.

argue that Plaintiff and the Plan are in Vermont,[18] the Plan is administered in Vermont,[19] and Cigna's adjudication of the claims had no connection to Utah.[20]

## DISCUSSION

### I. Legal Standard for Transferring Venue under § 1404(a).

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[21] Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found."[22] "The breach of an ERISA plan occurs at the place the policy holder resides and would have received benefits."[23] "The place is the location where the payment is to be made, even though the services may have been provided at an out-of-state location."[24]

Pursuant to § 1404(a), the moving party "bears the burden of establishing that the existing forum is inconvenient."[25] "[M]ere allegations are not sufficient to meet the moving party's burden of proof."[26] "Merely shifting the inconvenience from one side to the other . . . is

---

[18] Motion at 3.

[19] Id.

[20] Id. at 7.

[21] 28 U.S.C. § 1404(a).

[22] 29 U.S.C. § 1132(e)(2).

[23] Rula A.-S. v. Aurora Health Care, 2020 WL 7230119, *2 (D. Utah 2020) (quoting IHC Health Servs. V. Eskaton Props., 2016 WL 4769342, *4 (D. Utah 2016).

[24] Eskaton, 2016 WL 4769342 at *4 (quoting Island View Residential Treatment Ctr. v. Kaiser Permanente, 2009 WL 2614682, *2 (D. Utah 2009)).

[25] Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1515 (10th Cir. 1991).

[26] Rula A.-S, 2020 WL 7230119 at*2 (internal quotation marks omitted).

not a permissible justification for a change of venue."[27] The factors to be considered for a § 1404(a) transfer are:

> [T]he plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.[28]

Here, there is no dispute that the District of Vermont is an appropriate forum under the ERISA statute, and transfer pursuant to § 1404(a) would be permissible. "Therefore, the only disputed issue is whether the [District of Vermont] is a more appropriate forum under the factors set forth above."[29] Similar to *IHC Health Services, Inc. dba Mckay Dee Hospital v. Eskaton Properties, Inc.*, "[t]here is nothing in the record suggesting any variance among the District of Utah and the [District of Vermont] regarding the costs of making the necessary proof, the enforceability of any judgment obtained, [or] the relative ability to receive a fair trial."[30] Furthermore, where this is a case involving a federal question and applying federal law, "[q]uestions arising in the areas of conflicts of law or local law will not occur in this case."[31] So the relevant (and contested factors) are the plaintiff's choice of forum, the accessibility of witnesses and other sources of proof,

---

[27] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (internal quotation marks omitted).

[28] *Chrysler*, 928 F.2d. at 1516.

[29] *Rula A.-S*, 2020 WL 7230119, *2.

[30] No. 2:16-CV-3-DN, 2016 WL 4769342, at *8 (D. Utah Sept. 13, 2016).

[31] *Id.* (quoting *Danny P. v. Catholic Health Initiatives*, 2015 WL 164183, *2 (D. Utah 2015)).

congested court dockets, and other practical considerations, including the privacy of Plaintiff, Plaintiff's choice and the cost of counsel, and the purposes of ERISA.[32]

## II. Transferring Venue is Proper Under § 1404(a).

**A. Plaintiff's choice of forum receives less deference where the location of treatment is the only connection to the forum state**

"[U]nless the balance is strongly in favor of the movant[,] the plaintiff's choice of forum should rarely be disturbed."[33] "The plaintiff's choice of forum receives less deference, however, if the plaintiff does not reside in the district."[34] In this case, Plaintiff lives in Vermont, not Utah. Plaintiff signed up for a self-funded health benefits plan through the Vermont Electric Power Company, also located in Vermont.[35] Unlike *Gail F. v. Qualcare, Inc.*, where the court's denial of transfer out of Utah brought the forum closer to the plaintiff since she had moved to California from New Jersey,[36] deference to Plaintiff's choice in this case would do the opposite. Because Defendants move for transfer to Plaintiff's home District of Vermont, Plaintiff's choice of forum receives less deference.

Also, little weight is given to the "plaintiff's choice of forum where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum."[37] Plaintiff argues that the Tenth Circuit case *Employers Mutual* establishes that the treatment in Utah constitutes a significant factual connection to the District of Utah.[38] *Employers Mutual* dealt with insurance coverage decisions in Colorado, relating to an alleged negligent

---

[32] *See* Motion at 9; *see also* Opposition at 4, 5.

[33] *Emp'rs Mut.*, 618 F.3d at 1167 (*quoting Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)).

[34] *Id.* at 1168 (internal citations omitted).

[35] Motion at 3.

[36] *Gail F. v. QualCare, Inc.*, No. 1:15-CV-00130-DN, 2017 WL 589112 (D. Utah Feb. 14, 2017).

[37] *Emp'rs Mut.*, 618 F.3d at 1168. (internal quotation marks and citation omitted).

[38] Opposition at 6.

roofing incident in Wyoming, based on an insurance contract that was executed in Utah.[39] The plaintiff brought a declaratory judgment action in the District of Wyoming.[40] The Court denied the defendant's motion to transfer to the District of Utah, partly because the Court determined that "'the facts giving rise to the lawsuit have [a] material relation or significant connection to' Wyoming."[41] However, *Employers Mutual* is distinguishable from this case. As other cases have recognized, "the operative facts in an ERISA case center on the administrator's policies and decisions with respect to them, not the location of treatment."[42] "[T]he fact that [J.M.] was treated and the related costs are not at issue in this case."[43] Rather, what is at issue are the "alleged breaches and Defendants' decisions to deny payment for [plaintiff's] claim."[44]

Other recent cases from the District of Utah are illustrative. Although finding that Utah was a proper forum under the third ERISA venue provision, "where a defendant resides or may be found,"[45] the *Eskaton* court found that transfer was proper under § 1404(a).[46] The court was not convinced by the plaintiff's argument that, because treatment and care occurred in Utah, that Utah had "a greater connection to the operative facts of this case."[47] The court found that "Utah lacks any significant connection with the operative facts of this case other than the fact that it is where [the plaintiff] received treatment."[48] The court further pointed out that "the Plan was not

---

[39] *Emp'rs Mut.*, 618 F.3d at 1157–58.

[40] *Id.* at 1158.

[41] *Id.* at 1168 (quoting *Cook v. Atchison, Tokepa & Santa Fe Fy. Co.,* 816 F.Supp. 667, 669 (D.Kan. 1993)).

[42] *Rula A.-S*, 2020 WL 7230119, *3 (citing *Michael M. v. Nexsen Pruet Group Medical & Dental Plan*, 2018 WL 1406600, *12 (D. Utah 2018); *see also Eskaton*, 2016 WL 4769342 at *21-23).

[43] *Michael M.*, 2018 WL 1406600 at *5.

[44] *Id.*

[45] 29 U.S.C. § 1132(e)(2).

[46] *Eskaton,* 2016 WL 476934 at *7-8.

[47] *Id.* at 9.

[48] *Id.* at 8.

administered in Utah, Eskaton's decisions about payments were not made in Utah, and the alleged breaches of ERISA and the Plan did not occur in Utah."[49] Similarly, in *Danny P.*, the court found:

> that convenience and justice would be better served in the Western District of Washington where the P. family resides and therefore where the plan was breached. That could also be true of Illinois, where the plan was administered and adjudicated, or Kentucky and Colorado, where CHI is headquartered. Any of those venues, and especially the Western District of Washington, bears a greater, and therefore a more just connection to the case than Utah.[50]

Here, Plaintiff resides in Vermont.[51] The breach occurred in Vermont.[52] The ERISA Plan was established and administered in Vermont.[53] The Plan was adjudicated by Cigna, which is headquartered in Connecticut.[54] Either of these venues, and especially the District of Vermont, has a greater and more just connection than the District of Utah. "Because there is no other connection to Utah"[55] besides the location of treatment, "Plaintiff['s] choice of forum is entitled to less deference in this case."[56]

### B. The accessibility of witnesses and other sources of proof weigh in favor of transfer

"The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)."[57] "[A]lthough the convenience of the witnesses is not as important an issue in this case because the . . . review in ERISA cases is generally limited to the administrative record, the

---

[49] *Id.*

[50] *Danny P.*, 2015 WL 164183 at *3.

[51] Motion at 3.

[52] *Danny P.*, 2015 WL 164183 at *2.

[53] Motion at 3.

[54] *Id.* at 4.

[55] *Rula A.-S*, 2020 WL 7230119 at *4.

[56] *Id.*

[57] *Emp'rs Mut.*, 618 F.3d at 1169 (internal quotation marks omitted).

most relevant witnesses and documents are located" where the Plan is administered and where the decision to deny coverage of treatment occurred.[58] This is similar for witnesses and discovery relevant to a Parity Act claim, which targets "the language of the plan or the processes of the plan."[59] Plaintiff argues that because of his Parity Act claim, he will necessarily have witnesses from Utah,[60] and where Defendants assert their witnesses would be coming from Tennessee or Connecticut,[61] this creates a situation where transferring venue to Vermont would merely shift inconvenience to Plaintiff, especially where both would have to travel.[62]

A better understanding of the role of witnesses in a Parity Act claim informs the determination of whether Defendants meet their burden of showing, in the interest of justice, that Utah is sufficiently burdensome to justify transfer. First, it is important to note that an ERISA plan "is at the center of ERISA."[63] Employers like Vermont Electric

> have large leeway to design disability and other welfare plans as they see fit. And once a plan is established, the administrator's duty is to see that the plan is maintained pursuant to [that] written instrument. This focus on the written terms of the plan is the linchpin of a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place.[64]

However, pertaining to ERISA plans, the Parity Act rule prohibits "discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans."[65]

---

[58] *Eskaton,* 2016 WL 476934 at *9 (internal quotation marks omitted).

[59] *Michael W. v. United Behavioral Health*, 420 F.Supp.3d 1207, 1234 (D. Utah 2019) (*quoting Michael D. v. Anthem Health Plans of Kentucky, Inc.*, 369 F.Supp.3d 1159, 1175 (D. Utah 2019)).

[60] Opposition at 10.

[61] Motion at 9.

[62] Opposition at 9–10.

[63] *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013) (internal citation omitted).

[64] *Id.* (internal quotation marks omitted).

[65] *Michael W.*, 420 F.Supp.3d at 1233.

"Essentially, the Parity Act requires ERISA plans to treat sicknesses of the mind in the same way that they would a broken bone."[66] Claims for Parity Act violations "can target the language of the plan or the processes of the plan."[67] "The nature of Parity Act claims is that they generally require further discovery to evaluate whether there is a disparity between the availability of treatments for mental health and substance abuse disorders and treatment for medical/surgical conditions."[68] Through discovery, a plaintiff learns about and "compares the processes, strategies, evidentiary standards, and other factors [the Plan Administrator] used for sub-acute care in both mental and medical healthcare coverage contexts."[69] A claim may be based on the facially discriminatory terms of the Plan, discriminatory application of an exclusion by the insurance administrator, or as the result of an improper process.[70]

In *Michael W. v. United Behavioral Health*, United Behavioral Health ("UBH") administered the ERISA plan, and denied the plaintiff's coverage based on its determination that the plaintiff's son's condition had improved and that he no longer needed residential inpatient care.[71] UBH used "acute care medical necessity criteria" in its determination, which was allegedly different from its coverage decisions for analogous facilities.[72] The Plan allegedly treated other facilities differently.[73] Similarly, UBH denied coverage for outdoor behavior

---

[66] *Id.* (citing *Munnelly v. Fordham Univ. Faculty*, 316 F.Supp.3d 714, 728 (S.D.N.Y. 2018).

[67] *Id.* at 1234.

[68] *Id.* at 1235 (*quoting Timothy D. v. Aetna Health & Life Ins. Co.*, No. 2:18CV753DAK, 2019 WL 2493449, at *4 (D. Utah June 14, 2019).

[69] *Id.* (*quoting Melissa P. v. Aetna Life Ins. Co.*, No. 218CV00216RJSEJF, 2018 WL 6788521, at *4 (D. Utah Dec. 26, 2018) (internal quotation marks omitted).

[70] *Id.*

[71] *Id.* at 1236.

[72] *Id.*

[73] *Id.*

therapy programs.[74] "The Plan state[d] that UBH will deny benefits for care or procedures that are considered to be experimental, investigational, or unproven in the treatment of a particular condition, and the UBH claims administrator denied coverage . . . on this basis."[75] The focus was on what the Plan offered, what the Plan excluded, and what types of analogous medical/surgical treatments UBH did not exclude.[76]

Plaintiff alleges that he will need to call witnesses from Utah "to demonstrate the medical necessity of the treatment that was received."[77] However, Plaintiff's discovery will center on the *Plan's* terms denying coverage of outdoor wilderness programs, and the way in which *Defendants* applied their criteria to deny Plaintiff's claims. This evidence will largely be derived from *Defendants'* documents and witnesses, which have no connection to Utah. Plaintiff's argument is therefore unpersuasive. Because the Plan is located and administered in Vermont, discovery regarding the Plan's terms and administration of the Plan will occur in Vermont.[78] Discovery regarding adjudication of claims will allegedly be in Bloomfield, Connecticut or Chattanooga, Tennessee.[79]

Defendants argue that by bringing the claim in Utah, the "Plaintiffs are making it more difficult for Cigna and the Plan to mount a defense as multiple Cigna witnesses, and the Plaintiffs, will have to travel to Utah rather than Vermont, which is significantly closer to Cigna's home office."[80] Furthermore, "Vermont Electric, the Plan, and the Plan administrator

---

[74] *Id.* at 1237.

[75] *Id.* (internal citations omitted).

[76] *Id.* at 1238.

[77] Opposition at 10.

[78] *Id.* at 3.

[79] Motion at 9.

[80] Reply at 7.

would be in the same town as the courthouse."[81] A transfer to the District of Vermont would clearly be more convenient for Vermont Electric and the Plan administrator. Plaintiff argues that Cigna witnesses cannot avoid traveling to either Utah or Vermont,[82] but as Defendants assert, Vermont "is significantly closer to Cigna's home office."[83] Cigna specifically alleges that its headquarters are "234 miles from the Vermont District Court in Burlington, as compared to 2,275 miles from Salt Lake City."[84] If Defendant Cigna's witnesses were coming only from Tennessee, there is significant travel involved whether to Vermont or to Utah, and Defendants' would likely fail to meet their burden. But because the Plan is sited in Vermont, and some of the Cigna witnesses are also from Connecticut, this weighs in favor of transferring this action to the District of Vermont.

**C. Court congestion is a neutral factor, weighing neither in favor of nor against transfer**

Defendants argue that another reason justifying transfer to the District of Vermont is the congestion of the District of Utah's dockets.[85] "When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge."[86]

On the record, the Parties provide two of the recognized, "most relevant"[87] statistics to consider. Defendants cite statistics showing over twice as many actions per judgeship in the

---

[81] Reply at 7.

[82] Opposition at 10.

[83] Reply at 7.

[84] Motion at 6.

[85] Motion at 10.

[86] *Emp'rs Mut.*, 618 F.3d at 1169.

[87] *Id.*

District of Utah compared to the District of Vermont.[88] Plaintiff cites to statistics showing that for 2019 and 2020 the median time from filing to disposition was very similar.[89] While judges in the District of Utah have more pending cases per judge than judges in the District of Vermont, the median time from filing to disposition is relatively similar for the two districts. "These statistics are evenly split, and . . . the issue of congested dockets does not weigh in favor of or against transfer."[90]

### D. Practical considerations of privacy, cost of counsel, and the underlying purposes of ERISA weigh in favor of transfer

Plaintiff asserts that a transfer to the District of Vermont would merely shift the inconvenience of litigating this case to the Plaintiff.[91] This is based in part on his need to provide witnesses from Utah, which as discussed above, has little weight. Beyond witnesses, Plaintiff asserts that there is a concern for privacy, and that bringing the lawsuit in Utah will serve to protect that interest.[92] "While the Court understands Plaintiff's privacy concerns, there are ways to ensure privacy in [Vermont] just as there are in Utah. For instance, moving to seal portions of the proceedings is a better and more effective way to ensure privacy than choosing a distant forum."[93] Therefore, Plaintiff's legitimate privacy concerns are "given little weight in deciding whether to transfer the case."[94]

---

[88] Motion at 10.

[89] Opposition at 14–15.

[90] *Michael M.*, 2018 WL 1406600 at *6.

[91] Opposition at 4.

[92] Opposition at 4–5.

[93] *Michael M.*, 2018 WL 1406600 at *7.

[94] *Id.*

In addition, Defendants assert that, after Plaintiff had considered the "realities of litigation"[95] and "to minimize his costs of prosecuting this matter,"[96] "[w]hat appears to be the driving force behind the selection of this forum is the location of Plaintiff's lawyers, whose office is in Utah."[97] The location and convenience of counsel is not a relevant factor.[98] No deference is given, based on the reasoning "that '[i]f it is not inconvenient for the [plaintiffs] to travel to Utah for this litigation, they cannot claim with credibility that it is inconvenient for their counsel to travel to [Vermont].'"[99] In other words, although Plaintiff would be required to pay for "airfare, hotel costs, and out-of-pocket expenses"[100] if his counsel were to litigate the case in Vermont, to maintain venue in Utah would require the same airfare, hotel costs, and out-of-pocket expenses for Plaintiff to travel to Utah. These costs were part of the decision to select an out-of-state attorney from Utah, and therefore receive no deference.

Finally, Defendants raise the underlying purposes of ERISA, one of which is to encourage the creation of such plans by employers.[101] The United States Supreme Court has "recognized that ERISA represents a 'careful balancing' between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans."[102] Furthermore, "ERISA 'induc[es] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate

---

[95] Opposition at 4.

[96] *Id*. (citing Declaration of Scott M. ¶¶ 4–6 at 2.)

[97] Motion at 1–2.

[98] *Danny P.*, 2015 WL 164183 at *3.

[99] *Id.* (quoting *Island View*, 2009 WL 2614682 at *3).

[100] Declaration of Scott M. ¶ 5 at 2.

[101] Motion at 9.

[102] *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 215 (2004) (quoting *Pilot Life ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)).

remedial orders and awards when a violation has occurred."[103] Defendants assert that "[a] Vermont business willing to establish an ERISA governed benefit plan in Vermont should not have to travel to Salt Lake City to litigate a dispute brought by fellow residents of Vermont concerning a claim for benefits that was not handled in Utah and was denied in Vermont."[104] Defendants argue that, "especially since the matter involves a local power company that created the Plan, not a multinational corporation,"[105] to require an employer to litigate a local matter "in a distant state is contrary to the purpose of ERISA."[106] Where treatment is the only relevant connection to Utah, requiring Defendants to present a defense in Utah would serve to discourage employers from establishing an ERISA benefits plan for their employees. And where "Congress did not require employers to establish benefit plans in the first place,"[107] discouraging them from doing so would improperly tip the scales in frustration of Congress's purposes. Thus, ERISA's underlying purposes weigh in favor of transfer to the District of Vermont.

Therefore, considering all the above factors, Defendants have met their burden of showing that the District of Utah is an inconvenient forum and transfer to the District of Vermont is in the interest of justice.

---

[103] *Id.* (*quoting* Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 379 (2002)).

[104] Motion at 9.

[105] *Id.* at 10.

[106] *Id.* at 9.

[107] Conkright, 559 U.S. at 516.

**ORDER**

IT IS HEREBY ORDERED that the Motion[108] is GRANTED.

IT IS FURTHER ORDERED that this case is transferred to the United States District Court of Vermont as a more convenient forum.

Dated July 28, 2021.

BY THE COURT:

David Nuffer
United States District Judge

---

[108] Cigna Health and Life Insurance Company's Motion to Transfer Venue under 28 U.S.C. § 1404, docket no. 24, filed May 21, 2021.